IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VALERIE JAMES, ) | |
| ) | |
| ) | CIVIL ACTION NO. 0:06-1046-CMC-BM |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE,[1] ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff filed an application for Disability Widow's Benefits (DWB) on August 28, 2002, alleging disability as of March 1, 1998 due to anxiety attacks, claustrophobia, hypertension, arthritis, headaches, and stomach spasms. (R.pp. 48-49, 57). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an administrative law judge (ALJ), which was held on January 28, 2005. (R.pp. 437-461). At the hearing, Plaintiff amended her

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



alleged disability onset date to August 14, 2002, one day after her husband's death. (R.p. 441).[2] The ALJ thereafter denied Plaintiff's claim in a decision issued June 14, 2005. (R.pp. 16-23). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 7-10).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."**

---

[2] Plaintiff was married to Gerald James, who died on August 13, 2002. It is undisputed that Plaintiff meets the other criteria for entitlement to DWB as a surviving widow, with the only issue being whether Plaintiff was disabled under the standards of the Social Security Act. See (R.pp. 22, Findings 1-3); see also 20 C.F.R. § 404.335, et. seq. (2006).



[emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).  The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **Discussion**

A review of the record shows that Plaintiff, who was fifty-seven (57) years old when she alleges her disability began, has a high school education with no past relevant work experience. (R.pp. 21, 48-49, 58, 63). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.  After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does have an impairment or combination of impairments considered "severe" under the regulations, she nevertheless retained the residual functional capacity to perform a significant range of medium work,[3] with certain restrictions, and was therefore not disabled. (R.pp. 22-23).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to make an adequate assessment of her RFC in violation of SSR 96-8p, by failing to properly evaluate her

---

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

3



subjective complaints as to the extent of her pain and limitations, and by finding that Plaintiff could perform the jobs identified by the vocational expert notwithstanding the postural limitations set forth by the ALJ himself in his hypothetical. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

**I.**

First, it is important to note that the only period at issue here is the period between August 14, 2002 (Plaintiff's amended disability onset date) and December 18, 2004, one day before she turned sixty (60) years of age. Once Plaintiff turned sixty (60) years old on December 19, 2004, she became entitled to Widow's Benefits under the Social Security Act regardless of whether or not she was disabled. 20 C.F.R. § 404.335(c); see (R.pp. 16, 22). Plaintiff must therefore show that the decision of the Commissioner that she was able to work during that period of time is not supported by substantial evidence. Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving her disability]. Plaintiff has failed to make this showing.

Plaintiff's medical record reflects that following the death of her husband, Plaintiff presented to Dr. P.K. Moyd complaining of grief and insomnia. (R.p. 168). In is undisputed that Plaintiff also suffers from osteoarthritis and hypertension, for which Plaintiff receives medications. Plaintiff was referred by Dr. Moyd to a counselor on September 23, 2002, who treated her for her symptoms of depression, anxiety, and panic disorder. The counselor found that Plaintiff was fully capable of managing her own funds. (R.pp. 96, 165-166). Plaintiff continued also to be periodically

4



seen by Dr. Moyd through the rest of 2002, who did not assess any significant medical problems. (R.pp. 160-162, 164).

A state agency physician, Dr. Eloise Bradham, reviewed Plaintiff's medical record on December 30, 2002 and found that Plaintiff had the residual functional lifting capacity for medium work, with the ability to stand/walk and sit about six hours each in an eight hour work day with no further limitations. (R.pp. 100-107). Plaintiff also had a consultative psychiatric evaluation performed by Dr. Al Harley on January 9, 2003, who noted that although Plaintiff had seen a counselor, she had never sought psychiatric help, and that there was no evidence of any major depressive type difficulty. Dr. Harley concluded that Plaintiff was mildly impaired in her ability to relate to others and in her activities of daily living, and moderately constricted in her thought processes, with a GAF of forty-six (46) at that time.[4] (R.pp. 122-125). See Ramos v. Barnhart, No. 06-1457, 2007 WL 1008495 at *10 (E.D.Pa. Mar. 30, 2002) (citing Lozado v. Barnhart, 331 F.Supp. 2d 325, 334 (E.D.Pa. 2004) [finding that plaintiff's GAF scores of 45 and 35-40 during her hospitalization did not alter the analysis of the severity and functional limitations of plaintiff's depression and anxiety because substantial evidence supported the ALJ's conclusion that plaintiff had only mild restriction in daily living, moderate difficulties with social functioning, and moderate difficulties in maintaining concentration.] Plaintiff's medical records were also reviewed by a state agency psychologist, Dr. Donald Hinnant, on January 25, 2003, who concluded that Plaintiff did not

---

[4]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).

5



have a severe mental impairment, and had only mild restrictions in her activities of daily living, ability to maintain social functioning, and ability to maintain concentration, persistence or pace, with no extended episodes of decompensation. (R.pp. 108-121).

Plaintiff continued to see Dr. Moyd throughout 2003 for complaints of joint and muscle pain and hypertension. At times her hypertension would be under poor control, while at other times it was found to be under good control. Plaintiff's general diagnoses included muscle strain, anxiety, and hypertension, for which she received medications. Dr. Moyd also assessed Plaintiff with fibromyalgia[5] as well as with neurodermatitis[6]. See generally (R.pp. 147-159, 342-344). There is no indication in Dr. Moyd's medical records from 2003 that any of these ailments were of disabling severity. Plaintiff's records from that year also reflect an emergency room visit on February 2, 2003, where Plaintiff appeared complaining of neck and shoulder pain. These records show that, although Plaintiff exhibited decreased range of motion in her left shoulder, she was neurologically intact, had no edema, and had full grip strength. X-rays were unremarkable, and it was noted that Plaintiff's pain was "mild". She was assessed with a shoulder sprain and bursitis and prescribed pain medications. (R.pp. 126-144).

On July 21, 2003, state agency medical consultant Dr. J.H. Weston reviewed the

---

[5] Fibromyalgia is a chronic condition recognized by the American College of Rheumatology (ACR) characterized by inflammation of the fibrous and connective tissue, causing long-term but variable levels of muscle and joint pain, stiffness, and fatigue. Diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests. Brosnahan v. Barnhart, 336 F.3d 671, 672 n. 1 (8th Cir. 2003) (citing Jeffrey Larson, Fibromyalgia, in 2 The Gale Encyclopedia of Medicine 1326-27 (Jaqueline L. Longe, et al.eds., 2d ed. 2002)).

[6] Neurodermatitis is "cutaneous inflammation with itching that is associated with, but not entirely due to, emotional stress. After an initial irritant, scratching becomes a habit and prolongs the condition." see Taber's Cyclopedic Medical Dictionary (Taber's) (20th ed. 2005), available on Stat!Red Library CD-ROM (Fourth Qtr. 2006).

6



medical evidence and concluded that Plaintiff's arthritis was her only severe physical impairment, and that she was capable of performing medium work activity. (R.p. 145). Psychologist Dr. Edward Waller also reviewed Plaintiff's medical records on July 24, 2003, concluded that Plaintiff did not have a severe mental impairment, and agreed with Dr. Hinnant's earlier findings that Plaintiff had at most only mild mental limitations. (R.pp. 101, 107, 145).

Plaintiff's problems with arthritis pain, hypertension and anxiety continued into 2004, and by March 5, 2004 she was seeing a counselor for depression. On March 12, 2004, Dr. Moyd noted that Plaintiff had pain in both of her knees "after cleaning [her] client's house for the past month or so." Plaintiff's blood pressure on this visit was found to be "perfectly normal", and while she did have some edema in her legs and right knee crepitance, her left knee was normal with no tenderness. (R.pp. 324, 334-339). In June 2004, Plaintiff underwent a coronary angioplasty and implementation of a stent for the circumflex artery after complaining of chest pain. She was discharged on June 3, 2004 with "good results". (R.pp. 366-374, 377, 417-424).

Plaintiff was examined by Dr. Shijun Pan on June 24, 2004 for evaluation of a possible seizure disorder. Plaintiff was, however, doing well at that time, she was suffering from no muscle pain, and a CT scan of Plaintiff's head and x-rays of her chest were normal. A physical examination found normal muscle tone and strength, a normal neurological status, a mildly unsteady gait, and an inability by the Plaintiff to walk on her toes. (R.pp. 355-358, 362-365, 375). By July 2004, Plaintiff's hypertension was noted by Dr. Moyd to be under "good control", and he continued to treat her conservatively for her complaints of pain and headaches. In November 2004, Plaintiff was found to have only a "slight crepititus" in her knees with no swelling, and she declined orthopaedic referral. See generally, (R.pp. 318, 320, 323, 325-327).

7



After review of these medical records and consideration of Plaintiff's subjective testimony; see (R.pp. 18-20, 22); the ALJ found and concluded that Plaintiff retained the residual functional capacity to perform medium work reduced by restrictions which require no more than occasional balancing, stooping, kneeling, crouching and crawling; no climbing of ladders, ropes or scaffolds; and no more than occasional overhead work. The ALJ further found that Plaintiff had no more than mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace on complex tasks and detailed instructions, and that she could therefore perform simple, routine work in a low stress environment involving no more than occasional interaction with the public. (R.pp. 20, 22). The records and opinions of Plaintiff's treating and examining physicians discussed hereinabove provide substantial evidence to support the residual functional capacity found by the ALJ;[7] see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as do the opinions of the state agency physicians. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to

---

[7]The ALJ's restriction of the Plaintiff to simple, routine work in a low stress environment involving no more than occasional interaction with the general public adequately addresses Plaintiff's moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace on complex tasks and detailed instructions. Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress].

8



support the decision of the Commissioner].

Plaintiff's argument that the ALJ failed to evaluate her residual functional capacity in compliance with SSR 96-8p, which requires a discussion describing how the evidence supports the ALJ's conclusion, is without merit. The decision reflects that the ALJ reviewed the evidence in the record, noting how Plaintiff had proven osteoarthritis in both knees, the left being worse than the right, and how Plaintiff has also received treatment for shoulder pain and had been diagnosed with myositis[8] and fibromyalgia. The ALJ further noted that Plaintiff had nevertheless been encouraged to exercise and had generally received only conservative treatment for her complaints. Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability]. The ALJ also found that Plaintiff's medical records, while reflecting that Plaintiff suffers from anxiety and depression, show that she was generally found to be alert and fully oriented with normal intelligence with only mild to moderate restrictions in her ability to function, and including that there was no evidence that she had ever been treated by a mental health professional such as a licensed or certified psychologist or psychiatrist. Finally, the ALJ discusses Plaintiff's own testimony, noting that he did not find Plaintiff's allegations of disabling pain and limited functional capacity to be credible in light of her resistence to orthopaedic referral, absence of psychiatric or psychological treatment, and the absence of any specifically indicated functional restrictions from her physicians. (R.pp. 18-20).

In sum, the decision reflects that the ALJ discussed the relevant medical and non-medical evidence, and Plaintiff's ability to perform sustained work activity based on this evidence,

---

[8]Myositis is the inflammation of a voluntary muscle. Dorland's Illustrated Medical Dictionary, (28th ed. 1994), p. 1095.



sufficient to meet the standards of SSR 96-8p.  *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002).  Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit, as "'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" Delgado, 30 Fed.Appx. At 548 (quoting Bencivengo v. Comm'r of Soc. Sec., 241 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000); Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *2 (D.S.C. Mar. 29, 2004), aff'd, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005).

## II.

Plaintiff's argument that the ALJ failed to properly consider and evaluate her subjective testimony is also without merit.  As previously noted, the ALJ discussed Plaintiff's objective testimony in some detail, and found that the extent of pain and limitation asserted by the Plaintiff was not credible in light of the medical evidence and the fact that her physicians failed to place any functional restrictions on her.  See Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence];



see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"]. The undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony, or in his consideration of this testimony in conjunction with the objective medical evidence of record. See generally, Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving her disability]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss."]; Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.].

### III.

Finally, the undersigned does not find any reversible error in the jobs identified by the vocational expert as jobs that Plaintiff could perform with her limitations. The record reflects that in response to a hypothetical which reflected the residual functional capacity found to exist by the ALJ; (R.p. 458); the VE identified the jobs of laundromat laborer, counter supply worker, and hand packer as jobs that Plaintiff could perform with her impairments. (R.pp. 458-459). Plaintiff complains that all of these jobs require a reaching ability in excess of that found to exist by the ALJ, and that the job of counter supply worker also requires frequent stooping. See DOT (Dictionary of Occupational Titles) 361.687-018 (Laundromat Laborer), 319.687-010 (Counter Supply Worker) and 920.587-018 (Hand Packager). However, while Plaintiff is correct that the stooping requirement for a counter supply worker would preclude her from being able to perform that job, the other two positions cited by the VE do not reflect any requirement for more than occasional overhead reaching,

11



if indeed there is any such requirement. The DOT reflects that more than occasional reaching ability is needed for those positions, but there is no indication in the DOT that these positions require any specific overhead reaching ability, and the Vocational Expert specifically referenced the DOT numbers for these jobs in making his findings and testified that someone limited to no more than occasional overhead reaching could perform the named jobs. As both parties noted, "reaching" under the SCO[9] is defined as "extending hands and arms in any direction, which inherently encompasses more than the overhead reaching limitation assessed by the ALJ in this case. The ALJ could properly rely on this Vocational Expert testimony, which was sufficient to provide substantial evidence for the decision. See also Sawyer v. Apfel, No. 98-1520, 1998 WL 830653 (4th Cir. Dec. 2, 1998) ["[S]ocial security regulations do not require that the Secretary or the VE rely on classifications in the DOT."]; *cf.* Jones v. Apfel, 190 F.3d 1224, 1229-1230 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000); Conn v. Secretary of Health & Human Servs., 51 F.3d 607, 610 (6th Cir. 1995); Mont v. Chater, No. 96-2896, 1997 WL 201626, * 10 (7th Cir. Apr. 17, 1996) ["There is no requirement that a VE's testimony correlate with information in the DOT, and when it does not, the Secretary gives 'full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations.'"] (citing 20 C.F.R. § 416.969, 404.1569).

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e.,

---

[9]U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*.



if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

May 3, 2007

13

